## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GBI Services, LLC, *et al.,* | Case No. 25-12089 (CTG) |
| Debtors.[1] | (Jointly Administered) |
| GBI Services, LLC, *et al.,* | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 25-52467 (CTG) |
| PMP NICK LLC, | |
| Defendant. | |

## DEBTORS' OPENING BRIEF
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Zachary I. Shapiro (No. 5103)
Cory D. Kandestin (No. 5025)
James F. McCauley (No. 6991)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700

Dated: December 17, 2025
Wilmington, Delaware

---

[1]  The debtors in these chapter 11 cases ("**Debtors**"), along with the last four digits of each Debtor's federal tax identification number, are: GBI Services, LLC (0771), Nicklaus Companies, LLC (5063), N1JN-V, LLC (3178), Nicklaus Real Estate Licensing, LLC (7569), Nicklaus Project Management Services, LLC (6810), Nicklaus Advisory, LLC (3577), Nicklaus Design, LLC (7744), Nicklaus Interactive, LLC (9584), Nicklaus Brands, LLC (9771), Nicklaus International Brand Management, LLC (1536), Jack Nicklaus Golf Club, LLC (9616), and Nicklaus Golf Equipment Company, L.C. (6669).  The Debtors' mailing address is 3801 PGA Boulevard, Suite 565, Palm Beach Gardens, FL 33410.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ i

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

    A.   In 2007, PMP Nick Enters Into The Prepetition Junior Term Loan Agreement And Files UCC-1 Financing Statements .............................................................. 2

    B.   In 2012 and 2017, PMP Nick Files Continuation Statements ............................................ 2

    C.   After 2017, PMP Nick Does Not File Any Further Continuation Statements .................... 3

    D.   On November 12, 2025, PMP Nick Files New UCC-1 Financing Statements .................... 4

    E.   The DIP Financing And The Debtors' Stipulations ............................................................ 5

ARGUMENT ........................................................................................................................ 5

I.   Summary Judgment Standard .............................................................................................. 5

II.  There Can Be No Genuine Dispute That Filing The 2025 Financing Statements To Perfect Liens Nine Days Before The Petition Date Was An Avoidable Preference ........................... 6

CONCLUSION ...................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................................................6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................................................5

*F.D.I.C. v. Bathgate*,
   27 F.3d 850 (3d Cir. 1994).......................................................................................5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).................................................................................................6

*U.S. Glove, Inc. v. Jacobs (In re U.S. Glove, Inc.)*,
   2021 WL 2405399 (Bankr. D. N.M. June 11, 2021) .............................................7

*Ward v. Bank of Granite (In re Hickory Printing Grp., Inc.)*,
   479 B.R. 388 (Bankr. W.D.N.C. 2012)..............................................................6, 7

STATUTES & RULES

6 Del. C. § 9-515..........................................................................................................2, 3, 4

11 U.S.C. § 547.................................................................................................................6, 7

Fla. Stat. Ann. § 679.515 ................................................................................................2, 3, 4

SECONDARY SOURCES

5 Henry J. Levin & Arthur J. Somer, COLLIER ON BANKRUPTCY ¶ 547.03[4] (16th ed.) ...............7

### INTRODUCTION[2]

PMP Nick LLC (f/k/a Emigrant GB LLC) ("**PMP Nick**," or the "**Defendant**") asserts that it holds a $476 million secured claim against the Debtors.   However, the UCC-1 financing statements relating to this claim lapsed years ago.   PMP Nick did not file new financing statements until November 12, 2025—nine days before the Petition Date (the "**2025 Financing Statements**"). These new financing statements are avoidable as preferences.

The Court can and should decide this limited but important issue on summary judgment. The key fact—that PMP Nick filed the 2025 Financing Statements on November 12, 2025—cannot be disputed.   Nor can the application of the law to this key fact.   Because PMP Nick's older financing statements lapsed in 2022 and 2023, its filing of the new 2025 Financing Statements to re-perfect its liens is a "transfer" for preference purposes.   The transfer was on account of an antecedent debt (the May 2007 Term Loan).   The transfer occurred within the 90-day window while the Debtors were presumptively insolvent.   And by perfecting security, the transfer would allow for PMP Nick to recover more than it otherwise would in a hypothetical liquidation absent the transfer.   The Debtors thus are entitled to judgment as a matter of law on their preference claim. For these reasons and those below, the Court should grant summary judgment in the Debtors' favor on the Complaint, and avoid the transfer and perfection of security interests resulting from the 2025 Financing Statements.

---

[2]   Undefined capitalized terms in this Introduction have the meaning set forth below.  As set forth in the complaint filed contemporaneously herewith (the "**Complaint**"), the special committee of the board of managers of Nicklaus Companies, LLC is conducting an investigation into, among other things, potential recharacterization claims relating to PMP Nick's debt.  For purposes of this proceeding, the Debtors assume that the debt properly is characterized as such, and reserves all rights.  Nothing herein shall be construed as an admission that the Term Loan is debt.

## STATEMENT OF FACTS

**A.      In 2007, PMP Nick Enters Into The Prepetition Junior Term Loan Agreement And Files UCC-1 Financing Statements**

On May 25, 2007, PMP Nick (then known as Emigrant GB LLC) entered into that certain *Term Loan and Guaranty Agreement* (the "**Prepetition Junior Term Loan Agreement**" and the loan thereunder, the "**Term Loan**") with Nicklaus Companies, LLC, as borrower (the "**Borrower**"), and certain of the Debtors' affiliates, as guarantors (the "**Guarantors**" and together with the Borrower, the "**Obligors**"). *See Transmittal Declaration of Cory D. Kandestin in Support of Debtors' Motion for Summary Judgment* ("**Transmittal Dec.**") at Exhibit A. The parties also entered into a security agreement providing for liens on substantially all of the Obligors' assets. *See* Transmittal Dec. at **Exhibit B** (Pledge and Security Agreement) § 2.1.

On June 1, 2007 and June 5, 2007, PMP Nick filed UCC-1 financing statements for the Borrower and five Guarantors. *See* Transmittal Dec. Ex. **C-1** (Nicklaus Companies, LLC), **C-2** (Jack Nicklaus Golf Club, LLC), **C-3** (GBI Services, LLC), **C-4** (Nicklaus Design, LLC), **C-5** (Nicklaus Marketing, Inc.), and **C-6** (N1JN-V, LLC).

**B.      In 2012 and 2017, PMP Nick Files Continuation Statements**

Under the Uniform Commercial Code (the "**UCC**"), "a filed financing statement is effective for a period of five years after the date of filing." 6 Del. C. § 9-515(a); Fla. Stat. Ann. § 679.515(1).[3] Unless the secured party files a "continuation statement" by the end of this period, its financing statement will lapse. 6 Del. C. § 9-515(c); Fla. Stat. Ann. § 679.515(3) ("The effectiveness of a filed financing statement lapses on the expiration of the period of its effectiveness unless before the lapse a continuation statement is filed….").

---

[3]      The Borrower is a Delaware entity and thus its financing statement was filed in Delaware. The Guarantors are Florida entities and thus their financing statements were filed in Florida.

The secured party must file a continuation statement on or before the expiration of the five-year period. 6 Del. C. § 9-515(d); Fla. Stat. Ann. § 679.515(4) ("A continuation statement may be filed only within six months before the expiration of the five-year period specified in subsection (a) or the 30-year period specified in subsection (b), whichever is applicable.").[4]  If timely filed, a continuation statement will extend "the effectiveness of the initial financing statement for a period of five years." 6 Del. C. § 9-515(e); Fla. Stat. Ann. § 679.515(5).  When that five-year period ends, "the financing statement lapses in the same manner … unless, before the lapse, another continuation statement is filed…." *Id.*

With respect to the financing statements that PMP Nick filed against the Borrower and five Guarantors in 2007, PMP Nick filed continuation statements in 2012 (within five years of its initial 2007 filings) and 2017 (within five years of the 2012 continuation). *See* Transmittal Dec. Ex. **D-1** (Nicklaus Companies, LLC), **D-2** (Jack Nicklaus Golf Club, LLC), **D-3** (GBI Services, LLC), **D-4** (Nicklaus Design, LLC), **D-5** (Nicklaus Marketing, Inc.), and **D-6** (N1JN-V, LLC), and Transmittal Dec. Ex. **E-1** (Nicklaus Companies, LLC), **E-2** (Jack Nicklaus Golf Club, LLC), **E-3** (GBI Services, LLC), **E-4** (Nicklaus Design, LLC), **E-5** (Nicklaus Marketing, Inc.), and **E-6** (N1JN-V, LLC).

In October 2018, PMP Nick also filed UCC-1 financing statements, for the first time, for two additional Guarantors:  Nicklaus Golf Equipment Company L.C. and Nicklaus Brands, LLC. *See* Transmittal Dec. Ex. **F-1** and **F-2**.

C.    <u>**After 2017, PMP Nick Does Not File Any Further Continuation Statements**</u>

When the five-year period for the 2017 continuations expired in 2022, PMP Nick did not file any further continuation statements.  As a result, those UCC-1 financing statements lapsed.

---

[4]    The 30-year period specified in subsection (b) relates to public-finance transactions and manufactured home transactions, and is not applicable here.

*See* 6 Del. C. § 9-515(e); Fla. Stat. Ann. § 679.515(5) ("upon expiration of the five-year period, the financing statement lapses…."). Similarly, for the two Guarantors whose financing statements were filed in 2018, PMP Nick did not file any continuation statements upon the expiration of the five-year period in 2023. Those financing statements thus also lapsed.

Because of these lapses, the liens previously perfected by virtue of those financing statements became unperfected. *See* 6 *Del. C.* § 9-515(c); Fla. Stat. Ann. § 679.515(3) ("Upon lapse, a financing statement ceases to be effective and any security interest or agricultural lien that was perfected by the financing statement becomes unperfected, unless the security interest is perfected otherwise.").

Thus, all liens securing the Prepetition Junior Term Loan Agreement whose perfection depended on the UCC-1 financing statements became unperfected in 2022 and 2023.

**D.      On November 12, 2025, PMP Nick Files New UCC-1 Financing Statements**

On November 12, 2025, PMP Nick filed new UCC-1 financing statements against the Borrower and five Guarantors for its claim under the Term Loan (the "**2025 Financing Statements**"). *See* Transmittal Dec. at **Exhibit G-1** (Nicklaus Companies, LLC), **G-2** (Jack Nicklaus Golf Club, LLC), **G-3** (GBI Services, LLC), **G-4** (Nicklaus Design, LLC), **G-5** (Nicklaus Marketing, Inc.), and **G-6** (Nicklaus Golf Equipment, L.C.). Each financing statement purports to perfect liens in "all assets of Debtor whether now owned and existing or hereafter acquired or arising and wheresoever located, including all accessions thereto and products and proceeds thereof." *See id.* at Line 4.

On November 21, 2025 (the "**Petition Date**"), the Debtors filed these bankruptcy cases.

4

### E.    <u>The DIP Financing And The Debtors' Stipulations</u>

The Debtors commenced the bankruptcy cases with an agreement from FundNick, LLC, an entity affiliated with PMP Nick, to provide $17 million in post-petition financing to the Debtors (the "**DIP Financing**").

On November 26, 2025, the Court entered the Interim DIP Order[5] approving the DIP Financing on an interim basis to the extent set forth therein. The Interim DIP Order contained certain stipulations (the "**Stipulations**") in favor of, among others, PMP Nick. Interim DIP Order ¶ G. By the Stipulations, the Debtors stipulated to the validity of PMP Nick's liens and claims, subject to the rights of parties in interest, including the Debtors, to commence a Challenge (as defined in the Interim DIP Order). *See id.* ¶ 17(b). The Complaint constitutes such a Challenge.[6]

## ARGUMENT

## I.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (holding that summary judgment is "an integral part of the Federal Rules as a whole . . . designed to secure the just, speedy and inexpensive determination of every action.") (internal quotes and citation omitted). In considering whether summary judgment is appropriate,

---

[5]    The "Interim DIP Order" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief*, Case No. 25-12089 (CTG), Docket No. 55.

[6]    For the avoidance of doubt, the Debtors reserve all rights to commence further Challenges on other grounds.

5

courts may consider pleadings, admissions and any affidavits or declarations on file. *See, e.g.*, *F.D.I.C. v. Bathgate*, 27 F.3d 850, 860 (3d Cir. 1994).

When the moving party's evidence shows a lack of genuine dispute of material fact, the burden shifts to the opposing party to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (internal quotations and citation omitted). The mere existence of some alleged factual dispute will not defeat summary judgment if it is not germane to the relief being sought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts.").

## II.   There Can Be No Genuine Dispute That Filing The 2025 Financing Statements To Perfect Liens Nine Days Before The Petition Date Was An Avoidable Preference

The Court should grant summary judgment on Count I of the Complaint because the undisputed facts show that the transfer, which occurred nine days before the Petition Date, is an avoidable preference as a matter of law. A plaintiff must prove five elements to show that a transfer of an interest of the debtor in property is a preference:

(1) The transfer was "to or for the benefit of a creditor";

(2) The transfer was "for or on account of an antecedent debt owed by the debtor";

(3) The transfer was "made while the debtor was insolvent";

(4) The transfer was made within "90 days before the date of the filing of the petition" or, for insiders, was made within one year before the bankruptcy filing; and

(5) The transfer allowed the transferee to receive more than it would have received in a hypothetical chapter 7 liquidation had the transfer not been made.

11 U.S.C. § 547(b).

6

These elements are met here.  By perfecting a lien, the Debtors "transferred an interest of the debtor in property."  *See, e.g.*, *Ward v. Bank of Granite (In re Hickory Printing Grp., Inc.)*, 479 B.R. 388, 404 (Bankr. W.D.N.C. 2012) (granting plaintiff summary judgment because "[t]here is little question that, for bankruptcy purposes, the filing of the New Financing Statement constituted a transfer of an interest in property of the Debtor under the Code"); *see also id.* ("Under 11 U.S.C. § 547, the perfection of a security interest is a transfer subject to avoidance" and "the re-perfection of the Lien qualifies as a transfer under bankruptcy law") (citing additional cases). For preference purposes, an unperfected security interest is deemed transferred on the date of perfection, if that perfection occurs more than 30 days after the creation of the security interest. 11 U.S.C. § 547(e)(2)(B) ("For purposes of this section, except as provided in subparagraph (3) of this section, a transfer is made—(B) at the time such transfer is perfected, if such transfer is perfected after such 30 days…."). Thus, the "transfer" of security interests here occurred on November 12, 2025.

Each of the five elements of a preference claim are satisfied with respect to this transfer. First and second, the transfer was to a "creditor" and was "on account of an antecedent debt," because it was on account of the Term Loan made in May 2007.  *See U.S. Glove, Inc. v. Jacobs (In re U.S. Glove, Inc.)*, 2021 WL 2405399, at *3 (Bankr. D. N.M. June 11, 2021) (where creditor waited 20 months after date of agreement to perfect, "the 'transfer' occurred 20 months later and was on account of an antecedent debt."); 5 COLLIER ON BANKRUPTCY ¶ 547.03[4] ("[I]f a security transfer actually made ... is not perfected at once or within the statutory grace period, the [transfer] will be deemed 'antecedent to the delayed effective date of the transfer.'") (footnote omitted).

Third and fourth, the transfer was made nine days before the Petition Date, and thus falls within § 547(b)(4)'s lookback period (without the need to also determine whether PMP Nick is an

insider).  For the same reason, the Debtors were presumptively insolvent during that period.  *See* 11 U.S.C. § 547(f) ("For purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.").

Finally, the transfers enabled the Defendant to receive more than it would have received in a hypothetical liquidation had the security interest not been perfected, as the effect of the transfer was to elevate Defendant above unsecured creditors.

## <u>CONCLUSION</u>

Because there can be no genuine dispute that the Defendant filed the 2025 Financing Statements nine days before the Petition Date, the Debtors are entitled to judgment as a matter of law avoiding the transfer and perfection of liens arising from those new financing statements.  The Court therefore should grant summary judgment to the Debtors on Count I of the Complaint.

Dated: December 17, 2025
    Wilmington, Delaware

        */s/ Cory D. Kandestin*
        RICHARDS, LAYTON & FINGER, P.A.
        Zachary I. Shapiro (No. 5103)
        Cory D. Kandestin (No. 5025)
        James F. McCauley (No. 6991)
        920 North King Street
        Wilmington, Delaware 19801
        Telephone: 302-651-7700
        Email: shapiro@rlf.com
               kandestin@rlf.com
               mccauley@rlf.com

        *Proposed Attorneys for the Debtors*
        *and the Debtors in Possession*

8